IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREG SORBA,<br><br>      Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br><br>      Defendant. | Civil Action No.: 2:19-cv-01456-RJC<br><br>**DEFENDANT LM GENERAL INSURANCE COMPANY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED** |

AND NOW comes Defendant LM General Insurance Company (incorrectly pled as Liberty Mutual Insurance Company) ("LM"), by and through its counsel, Faegre Drinker Biddle & Reath LLP, and files this Motion To Dismiss For Failure To State A Claim On Which Relief Can Be Granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and avers in support as follows:

1.    Plaintiff claims he is entitled to receive underinsured motorist ("UIM") benefits under a policy issued by LM. Plaintiff asserts claims for breach of contract and bad faith pursuant to 42 Pa.C.S. § 8371.

2.    Plaintiff's UIM claim arises from an accident he was in while riding his motorcycle in July 2018. He was paid the limit of the other driver's liability insurance, and LM paid him the UIM limit of the policy he bought to cover his motorcycle. Now, Plaintiff claims he is also entitled to stack the UIM benefits of a separate policy he bought from LM, which covers only certain automobiles and which expressly excludes coverage for Plaintiff's motorcycle. Specifically, it excludes coverage for injury sustained by Plaintiff "while using . . . any motor vehicle owned by you . . . , which is not insured for [UIM] Coverage under this policy" (the "Household Exclusion"). Plaintiff does not dispute that this exclusion, by its terms, bars coverage. Instead, he contends the

1

exclusion violates the Motor Vehicle Financial Responsibility Law ("MVFRL") and is "unenforceable as a matter of law" based on *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131 (Pa. 2019). Plaintiff is mistaken. This case is controlled by *Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747 (Pa. 2002), not *Gallagher*.

3. In *Colbert*, the Pennsylvania Supreme Court held that the household exclusion in that case was *enforceable* and did *not* violate the MVFRL because nobody ever paid for the UIM benefits the plaintiff in that case sought to recover. *See* 813 A.2d at 754. In reaching that conclusion, the court emphasized that the primary policy purpose of the MVFRL is keeping down the cost of insurance and that, therefore, the MVFRL must be interpreted such that "insureds are prevented from receiving gratis coverage." *Id.* at 753. *See id.* (rejecting interpretation that would allow insureds to "receive benefits far in excess of the amount of coverage for which they paid").

4. *Gallagher* involved different facts. In *Gallagher*, the insured bought two policies, one of which covered his motorcycle and the other his cars (the "Car Policy"). 201 A.3d at 133. The insured selected and paid for stacked coverage on both policies and never signed the statutorily-mandated stacking waiver form. *Id.* While riding his motorcycle, the insured collided with an underinsured driver. *Id.* at 132. The insurer paid the motorcycle policy's UIM limit but denied coverage under the Car Policy based on a household exclusion similar to the one in the LM Policy. *Id.* at 133. The court held that the insurer could not enforce the exclusion to prevent stacking because "the insured desired stacking, elected stacking, paid additional premiums for stacking and never knowingly waived stacking." *Id.* at 136.

5. In reaching its decision, the court emphasized the importance of the statutorily-mandated waiver form. *See id.* at 137 ("Importantly, the MVFRL makes clear that to effectuate a waiver of UM/UIM coverage, an insurer must provide the insured with a statutorily-prescribed

waiver form, which the named insured must sign if he wishes to reject the default provision of stacked coverage. This waiver provision has the salutary effect of providing insureds with detailed notice and knowledge of their rights to UM/UIM coverage absent such formal waiver.") (citation omitted).

6. After observing that the insured never signed the statutorily-mandated waiver form and that the household exclusion was added to the policy by an amendment, the court explained:

> This [household exclusion], buried in an amendment, is inconsistent with the unambiguous requirements [of] Section 1738 of the MVFRL under the facts of this case insomuch as it acts as a *de facto* waiver of stacked UIM coverage provided for in the MVFRL, despite the indisputable reality that Gallagher did not sign the statutorily-prescribed UIM coverage waiver form. Instead, Gallagher decided to purchase stacked UM/UIM coverage under both of his policies, and he paid [the insurer] premiums commensurate with that decision. He simply never chose to waive formally stacking as is plainly required by the MVFRL.

*Id.* at 138.

7. Significantly, *Gallagher* did not overrule *Colbert*. To the contrary, the *Gallagher* court emphasized that its decision was consistent with the animating principle in *Colbert*, *i.e.*, "that an insured should receive the coverage for which he has paid." 201 A.3d at 138.

8. This case is controlled by *Colbert*, not *Gallagher*. *Gallagher* does not apply for two reasons. First, *Gallagher* was expressly premised on the fact that the insured had paid for stacked coverage and had not signed the statutorily-mandated waiver form. Plaintiff, by contrast, signed the statutorily-mandated waiver form and never paid for stacked coverages. Second, unlike in *Gallagher,* the Household Exclusion in the Auto Policy is not "buried in an amendment." It is in the UIM coverage form, which is conspicuously titled "UNDERINSURED MOTORISTS COVERAGE – PENNSYLVANIA (*NON-STACKED*)." (emphasis added.)

3

9. Plaintiff is seeking to turn the reasoning of *Gallagher* on its head by applying it to provide UIM benefits that Plaintiff never requested or paid for and, in fact, expressly waived. Nothing about the facts of this case warrants invalidating the unambiguous Household Exclusion and forcing LM to provide Plaintiff with free insurance coverage.

10. Plaintiff also claims the statutorily-mandated waiver form that he signed – which is the only form the MVFRL allows insurers to use – only waives intra-policy stacking (*i.e.*, stacking of limits of all vehicles covered by one policy), not inter-policy stacking (*i.e.*, stacking of limits of more than one policy). The plain language of the form waives all "stacked limits." It does not distinguish between inter- and intra-policy stacking. Further, Plaintiff's tortured reading of the waiver form flatly conflicts with *Gallagher* itself. *Gallagher* involved inter-policy stacking, and the court held that the household exclusion violated the MVFRL in that case *precisely because the insured had not signed the statutorily-mandated waiver form*. If that form did not waive inter-policy stacking, the *Gallagher* decision would make no sense at all.

11. *Donovan v. State Farm Mut. Auto. Ins. Co.*, No. 17-03940, 2019 WL 2715635 (E.D. Pa. June 28, 2019), which is currently on appeal, was wrongly decided. Based on *dicta* in *Craley v. State Farm Fire & Cas. Co.*, 895 A.2d 530, 539-40 (Pa. 2006), the *Donovan* court held that the statutorily-mandated waiver form did not waive inter-policy stacking and that, therefore, household exclusions are unenforceable under *Gallagher* even if the insured signed a stacking waiver. *Donovan* and the *dicta* in *Craley* are in direct conflict with *Gallagher*, the Pennsylvania Supreme Court's most recent pronouncement on the issue of whether the statutorily-mandated waiver form waives inter-policy stacking. *See Gallagher*, 201 A.3d at 137-138 (explaining, in the context of a claim for inter-policy stacking, that Section 1738 "unambiguous[ly]" requires that a waiver must be effected by "the statutorily-prescribed UIM coverage waiver form," which

provides "insureds with detailed notice and knowledge of their rights to UM/UIM coverage absent such formal waiver").

12.     Moreover, *Donovan* ignored the clear language of the statutorily-mandated waiver form and structure of the MVFRL.  Reading the waiver form to apply to inter-policy stacking, as the *Gallagher* court did, is consistent with the structure of not only Section 1738 but also the MVFRL as a whole.  Given that Section 1738(a) requires that all policies provide both inter- and intra-policy stacking and Section 1738(b) provides that insureds can waive both inter- and intra-policy stacking, *see Craley*, 895 A.2d at 539-40, it makes sense that the statutorily-mandated waiver form set forth in Section 1738(d) covers both inter-and intra-policy stacking.  This is particularly true given that (1) the form does not distinguish between inter- and intra-policy stacking; (2) "the legislature imposed a significant sanction on an insurance company that deviates from the form, voiding any 'rejection form that does not comply with this section,'" *Craley*, 895 A.2d at 540–41 (quoting 75 Pa.C.S.A. § 1738(e)); (3) the MVFRL does not contain any other stacking waiver form or other direction on how a waiver of inter-policy stacking could otherwise be accomplished; and (4) with respect to every other required coverage selection form and notice, the MVFRL specifically sets forth the specific language that must be used or the manner in which a coverage choice is to be made, *see, e.g.*, 75 Pa.C.S.A. § 1705 (full/limited tort options); 75 Pa.C.S.A. § 1731 (rejection of UM/UIM coverages); 75 Pa.C.S.A. § 1791 (notice of available benefits); 75 Pa.C.S.A. §1791.1 (notices of tort options and premium discounts); 75 Pa.C.S.A. § 1734 (requests for UM/UIM limits that are lower than the policy's liability limits).

13.     Moreover, *Donovan* simply ignored *Colbert* and its animating principle, namely that the MVFRL should be interpreted such that insureds receive the insurance they pay for, and only the insurance they pay for.  *Donovan* likewise ignored that the holding in *Craley* was driven

by that same principle.  Indeed, notwithstanding the *Craley* court's *dicta* about the waiver form, the court actually held that the insured in that case (who did not select or pay for stacked coverage) *did* effectively waive inter-policy stacking by signing the form.  *See Craley*, 895 A.2d at 504 ("[W]e [have] held that the public policy of cost-containment 'functions to protect insureds against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure, and prevents insureds from 'receiving gratis coverage.'  Thus, insurers are not 'compelled to subsidize unknown and uncompensated risks by increasing insurance rates comprehensively.'")  Indeed, the *Gallagher* court also emphasized that its decision was consistent with the "age-old rubric[]" that "an insured should receive the coverage for which he has paid." 201 A.3d at 138.   The *Donovan* court did not even attempt to address the fact that its decision to provide the insured in that case with gratis insurance coverage was flatly inconsistent with the principle applied by the courts in *Colbert*, *Craley*, and *Gallagher*.

14. Alternatively, if Sections 1738(d) and (e) do not apply to inter-policy stacking, as Plaintiff apparently contends, then there is no requirement that a waiver of inter-policy stacking must be in writing or otherwise take any particular form.  If that is true, Plaintiff effectively waived inter-policy stacking by accepting a policy that specifically and conspicuously limits inter-policy stacking and by paying the associated lower premium, without ever requesting or otherwise suggesting he wanted stacked coverage.

15. Alternatively, if Plaintiff's interpretation of *Gallagher* were correct, then *Gallagher* would have announced a new rule that should apply only in cases involving policies issued after the court's decision.  Not all decisions of the Pennsylvania Supreme Court apply retroactively, and when a decision announces a new rule of law, the determination of whether that decision should apply retroactively must be made on a case by case basis.  *See Stackhouse v. Stackhouse*, 862 A.2d

102, 106 (Pa. Super. 2004). If a decision announces a new rule, the court must determine if retroactive application is warranted by considering "(1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of the administration of justice by the retroactive application of the new rule." *Stackhouse*, 862 A.2d at 106 (quoting *Blackwell v. State Ethics Comm'n*, 589 A.2d 1094, 1099 (Pa. 1991)). The court's stated purpose in *Gallagher* was to give effect to the MVFRL requirement that insurers use a specific waiver form, to prevent insurers whose insureds have not signed that form from imposing a *de facto* waiver through an exclusion, and to provide insureds the coverage they paid for. *See Gallagher*, 201 A.3d at 137. Applying *Gallagher* here will not advance the purpose of the new rule because Plaintiff waived stacking by signing the statutorily-mandated form and never paid for stacked coverage. Further, it was not only reasonable for insurers and insureds to rely on the old rule, it was consequential, as insurers determined premiums based on the understanding that the old rule applied and that household exclusions are enforceable. Applying *Gallagher* retroactively would force insurers to charge insureds premiums for stacked coverage that they wanted to reject. Finally, the administration of justice favors applying *Gallagher* only to cases involving policies issued after the court's decision. Such a bright line rule would be easily understood by insureds and insurers and easily applied by courts.

16. Because the Household Exclusion bars coverage and *Gallagher* does not apply, the Court should dismiss Plaintiff's breach of contract claim.

17. Even if LM's coverage position were incorrect (which it is not), LM would still be entitled to dismissal of Plaintiff's bad faith claim because LM's interpretation of *Gallagher* is, at a minimum, reasonable as a matter of law.

18. To prevail on a "bad faith" claim under 42 Pa. C.S.A. § 8371, the insured must prove by "clear and convincing evidence" that "the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (2017). Evidence of "mere negligence is insufficient for a finding of bad faith under Section 8371." *Id.* at 374.

19. Therefore, if an insurer "has a reasonable basis for denying a claim, that is all it needs to defeat a bad faith claim." *Blaylock v. Allstate Ins. Co.*, No. 1:CV-06-1456, 2008 WL 80056, at *7 (E.D. Pa. Jan. 7, 2008). "This is true even when the insurer takes a coverage position that is ultimately found to be meritless." *Victoria Ins. Co. v. Ren*, No. CIV.A. 08-517, 2008 WL 2371850, at *2 (E.D. Pa. June 9, 2008). "Bad faith cannot be found where the insurer's conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy and the law." *Bostick v. ITT Hartford Grp., Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999). *See also Employers Mut. Cas. Co. v. Loos*, 476 F. Supp. 2d 478, 496 (W.D. Pa. 2007) ("Pennsylvania law does not recognize bad faith where an insurer makes 'a reasonable legal conclusion based on an area of the law that is uncertain or in flux.'") (quoting *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. Ct. 2004)); *Alexander v. Provident Life Assurance Co.*, No. 3:CV-00-1405, 2003 WL 23757578, at *5 (M.D. Pa. Jan. 2, 2003) ("The law allows for the possibility that an insurer makes an incorrect decision."); *Jung v. Nationwide Mut. Fire Ins. Co.*, 949 F. Supp. 353, 359 n.7 (E.D. Pa. 1997) (declining to express an opinion on "whether Nationwide's interpretation of the law was correct" and explaining that whether Nationwide's interpretation is correct "is irrelevant, because as long as Nationwide's act was reasonable, bad faith cannot be found even if their analysis of the law was wrong"); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 841 (M.D. Pa. 1995)

(finding "no bad faith in refusing to defend and indemnify based on a reasonable interpretation of the language of the policy," even though insurer's interpretation is ultimately determined to be wrong).

20. For the reasons set forth above, *Gallagher* does not apply and the Household Exclusion precludes coverage. But, regardless, for purposes of Plaintiff's bad faith claim, it does not matter whether LM's interpretation of the law is correct. What matters is whether LM's interpretation is reasonable, and surely it is. No Pennsylvania court has ever held that, under *Gallagher*, all household exclusions are unenforceable as a matter of law, even if the insured signed the statutorily-mandated waiver form and never requested or paid for stacked coverage. *See Victoria*, 2008 WL 2371850, at *3 (dismissing claim that insurer's legal position constituted "bad faith" where the insurer's position was "at least arguable" and "neither party has cited a case that decides the precise legal question before us"); *Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d 680, 690 (Pa. Super. 1994) (reversing trial court's finding that insurer's legal position constituted "bad faith" where the relevant law was "unsettled" and neither the Supreme Court nor the Superior Court had addressed the specific issue). To be sure, the *Donovan* court recently held that a household exclusion is unenforceable even if the insured signed the statutorily-mandated waiver form and never paid for stacked coverage. As explained above, however, *Donovan* is on appeal, and it represents a radical extension of *Gallagher's* holding that is untethered to, and in fact flatly inconsistent with, the reasoning in *Gallagher*. Moreover, *Donovan* ignores *Colbert*, the clear language of the statutorily-mandated waiver form, and the purpose and structure of the MVFRL.

21. Even if this Court were to disagree with LM's position regarding *Gallagher* and *Donovan*, LM's position is reasonable as a matter of law and, therefore not "bad faith." Abundant

case law supports that result. *See*, *e.g.*, *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 525 (3d Cir. 2012) (holding that insurer had a duty to defend the insured but affirming summary judgment in favor of insurer on "bad faith" claim because the "exclusion in the Policy provided [the insurer] a reasonable basis for declining to provide a defense to [the insured]"); *Sayles v. Allstate Ins. Co.*, 260 F. Supp. 3d 427, 448 (M.D. Pa. 2017) (ruling in favor of insured on coverage issue but dismissing bad faith claim premised on the insurer's coverage position because the insurer "made a 'reasonable legal conclusion based on an area of law that is uncertain or in flux.'") (quoting *Loos*, 476 F. Supp. 2d at 496); *Krisa v. Equitable Life Assurance Society*, 113 F. Supp. 2d 694, 703 (M.D. Pa. 2000) ("While Equitable's position that the focus of the inquiry must be limited to the time frame immediately prior to the alleged onset of disability may ultimately prove unsound, it has not been shown to be unreasonable."). The Court should follow these cases and dismiss Plaintiff's bad faith claim.

22. LM incorporates by reference its Brief in support of its Motion to Dismiss.

23. Counsel for LM unsuccessfully attempted to confer regarding this Motion with Plaintiff's counsel, whose office was closed due to COVID-19.

WHEREFORE, LM respectfully requests that this Honorable Court dismiss Plaintiff's claims against it with prejudice and enter an Order consistent with the proposed Order filed contemporaneously with this Motion.

Respectfully submitted,

Dated: March 23, 2020               By: /s/ Frederick P. Marczyk
                                    Timothy J. O'Driscoll, Esquire
                                    Frederick P. Marczyk, Esquire
                                    Jessica E. Loesing, Esquire
                                    FAEGRE DRINKER BIDDLE & REATH LLP
                                    One Logan Square, Suite 2000
                                    Philadelphia, PA 19103-6996
                                    (215) 988-2700

E-mail:  timothy.odriscoll@faegredrinker.com
frederick.marczyk@faegredrinker.com
jessica.loesing@faegredrinker.com

*Counsel for Defendant,*
*LM General Insurance Company*
*(incorrectly pled as Liberty Mutual Insurance Company)*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 23, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.

                                                         /s/ Frederick P. Marczyk
                                                         Frederick P. Marczyk